UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CLAUDIA TREADWELL**, | |
| Plaintiff, | |
| v. | Case No. 23-cv-03616 (CRC) |
| **DISTRICT OF COLUMBIA**, | |
| Defendant. | |

<u>OPINION AND ORDER</u>

Plaintiff Claudia Treadwell claims her employer, the District of Columbia Office of the Attorney General ("OAG"), discriminated against her and subjected her to a hostile work environment because of her age. She filed suit under the D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01 *et. seq*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The District has moved to dismiss only the hostile work environment claim. Finding that Treadwell has plausibly alleged that the pervasiveness of offensive, age-related comments created a hostile work environment, the Court denies the motion.

I. **Background**

The Court draws the following factual background from the allegations in Treadwell's Amended Complaint, which it must accept as true for purposes of this motion. <u>See</u> <u>Sissel v. U.S.</u> <u>Dep't of Health & Hum. Servs.</u>, 760 F.3d 1, 4 (D.C. Cir. 2014).

Treadwell is a senior investigator in OAG's Child Support Enforcement Division ("CSED"). Am. Compl. ¶ 3; <u>see</u> Mot. Dismiss at 1. The D.C. Department of Human Services hired her as an investigator in 1981, and she moved to CSED in 1986 when her department was transferred to OAG. <u>Id.</u> ¶¶ 15–16. She is currently the oldest investigator at CSED. <u>Id.</u> ¶ 17. Around 2013, Jeffrey Jackson became Treadwell's direct supervisor. <u>Id.</u> ¶ 22. According to

Treadwell, Jackson "harbored animus" toward her from the inception of his tenure.  Id. ¶ 23. This animus manifested in several ways.

First, Treadwell alleges that Jackson "foster[ed] a culture" where ageist behavior was tolerated.  Id. ¶ 24.  She claims that Jackson and her colleagues regularly refer to her as "OG" and "old timer" and that she is "greeted almost daily" with questions and comments suggesting she retire.  Id. ¶¶ 25–27.

Second, she alleges that Jackson favors younger employees in his case assignments.  Id. ¶ 28.  According to Treadwell, despite her long tenure at OAG, Jackson assigns her "inconsequential" cases while reserving important cases for younger employees.  Id.  This assignment practice has harmed Treadwell in several ways, she says.  It has "take[n] a toll" on her self-worth.  Id. ¶ 32.  Her performance ratings have suffered because "ratings determinations and performance reviews are based on cases that have merit."  Id. ¶ 30.  And, on one occasion, Jackson's assignment practices kept her from developing the skills necessary for promotion to a case manager position.  Id. ¶ 34–39, 44–45.

Third and relatedly, Treadwell alleges that OAG failed to promote her on two occasions. In 2019, OAG reached an agreement with its union to promote all career-ladder employees.  Id. ¶ 48–49.  At that time, Treadwell had been employed in a GS-11 position for a decade.  Id. ¶¶ 20–21.  To initiate the promotions, Jackson sent human resources the names of eligible employees in two batches; Treadwell was in the second batch.  Id. ¶¶ 50–51.  By the time OAG began processing employees in the second batch, the agency claimed it lacked funding to move forward with the promotions.  Id. ¶ 51.  Then, in July 2021, Jackson suggested to Treadwell that she would be promoted.  Id. ¶ 54.  He allegedly told her, "I hope you are not retiring because I put

you in for a promotion.  At least hang on and wait for the promotion until you retire."  Id.  A few months later, however, Jackson broke the news that she would not be promoted.  Id. ¶ 55.

In March 2022, Treadwell filed a charge of age discrimination with the D.C. Office of Human Rights, which was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Id. ¶ 56.  The EEOC dismissed her charge in September.  Id. ¶ 13.  A week later, OAG promoted Treadwell from a GS-11 to a GS-12 position.  Id. ¶ 57.  The agency did not, however, retroactively apply her GS-12 promotion or award her back pay, and Treadwell claims the agency promoted her to the wrong step within GS-12.  Id. ¶¶ 58–62.

Treadwell filed this lawsuit on December 1, 2022, see Compl., and amended her complaint soon after, see Am. Compl.  The District now moves to dismiss the second count of the complaint under Federal Rule of Civil Procedure 12(b)(6).  Mot. Dismiss.  That count alleges that OAG subjected Treadwell to a hostile work environment in violation of the DCHRA.

## II.    Legal Standards

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court "must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up).  However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action" or "mere conclusory statements."  Iqbal, 556 U.S. at 678.

### III.  Analysis

To make out a hostile work environment claim, a plaintiff must show that her employer subjected her to "'discriminatory [or retaliatory] intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Román v. Castro, 149 F. Supp. 3d 157, 166 (D.D.C. 2016) (quoting Baird v. Gotbaum, 662 F.3d 1246, 1251 (D.C. Cir. 2011)).[1]  "[S]everity and pervasiveness are determined by reference 'to all the circumstances,' including 'the frequency of the discriminatory conduct; . . . whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Baird v. Gotbaum, 792 F.3d 166, 169 (D.C. Cir. 2015) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

While courts in this jurisdiction generally "frown on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim," Baloch v. Norton, 517 F. Supp. 3d 345, 364 (D.D.C. 2007), courts will not dismiss a "hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own," Baird, 662 F.3d at 1252.

---

[1]  Though Treadwell's hostile work environment claim rests only on the DCHRA, the Court will apply both Title VII and DCHRA hostile work environment precedent.  See Daka, Inc. v. Breiner, 711 A.2d 86, 94 (D.C. 1998) ("[T]his court, in deciding issues arising under the DCHRA, consistently relies upon decisions of the federal courts in Title VII cases as particularly persuasive authority."); Carpenter v. Fed. Nat. Mortg. Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999) ("In interpreting its Human Rights Act the District of Columbia . . . generally seems ready to accept the federal constructions of Title VII, given the substantial similarity between it and the D.C. Human Rights Act."); Burrell v. Shepard, 321 F. Supp. 3d 1, 9 (D.D.C. 2018) ("[T]he legal standards for establishing [hostile work environment] claims under Title VII and the DCHRA are substantively the same.").

Though not by much, Treadwell has sufficiently pled that OAG subjected her to a hostile work environment in violation of the DCHRA.  Her allegations fall into three categories: offensive comments, undesirable case assignments, and non-promotions.  For the reasons described below, the Court finds that the offensive comments plausibly created a hostile work environment but the other alleged misconduct fails to state a claim.

Though the verbal abuse Treadwell alleges she suffered was not particularly severe, it was pervasive.  She claims "she is greeted almost daily" with comments such as "Oh, you're still here, you haven't retired yet," and "what's up OG?"  Am. Compl. ¶ 27.  As other courts have recognized, these kinds of "daily" or "almost daily" comments can create a hostile work environment.  In Dediol v. Best Chevrolet, Inc., the Fifth Circuit reversed a lower court's grant of summary judgment on an ADEA hostile work environment claim where the plaintiff had offered evidence that, "a half-dozen times daily," he was called "names like 'old mother******,' 'old man,' and 'pops.'"  655 F.3d 435, 441 (5th Cir. 2011); see also Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995) (harassment was sufficiently severe and pervasive where plaintiff was called racially offensive names "almost daily").  And, the D.C. Circuit has held that sufficiently pervasive conduct, even if not severe, can establish a hostile work environment claim.  See Brooks v. Grundmann, 748 F.3d 1273, 1276 (D.C. Cir. 2014) ("Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other.").

To be sure, other courts have rejected hostile work environment claims premised on the use of similar age-related names and comments.[2]  See Ware v. Hyatt Corp., 80 F. Supp. 3d 218,

---

[2]  The parties debate the meaning and severity of the term "OG."  Whereas the District views it as a "term of respect, not ridicule," Mot. Dismiss at 6, Treadwell emphasizes the negative connotations of its origins in African-American gang culture, Opp'n at 1–3.  The Court

227 (D.D.C. 2015) (supervisors referred to plaintiff as "old man" among other names); <u>Bryant v. Leavitt</u>, 475 F. Supp. 2d 15, 19, 28 (D.D.C. 2007) (plaintiff's supervisor "made unwelcome comments about his age"); <u>Fragola v. Kenific Grp., Inc.</u>, No 21-cv-1423, 2022 WL 1908824, at *6 (D.D.C. June 3, 2022) (co-worker told the plaintiff "[y]ou're too old to be working, you should retire").  But those cases are distinguishable.  There, the plaintiffs had failed to adduce evidence of the comments' frequency and were opposing summary judgment motions, <u>Ware</u>, 80 F. Supp. 3d at 228; <u>Bryant</u>, 475 F. Supp. 2d at 28, or the comments were isolated, <u>Fragola</u>, 2022 WL 1908824, at *6 ("[T]he alleged incidents are too few, too isolated, and insufficiently extreme . . . to support a hostile work environment claim.").

Given the pervasiveness of the comments, at least as alleged, Treadwell has stated a hostile work environment claim.  The Court is mindful that the DCHRA "is not intended to function as a 'general civility code' that regulates the 'ordinary tribulations of the workplace, such as the sporadic use of abusive language . . . and occasional teasing.'"  <u>Burrell v. Shepard</u>, 321 F. Supp. 3d 1, 12 (D.D.C. 2018) (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998)).  But what Treadwell allegedly endured was not "sporadic" or "occasional."  At this stage, she has therefore alleged enough facts to "nudge[] [her] claim[] across the line from conceivable to plausible."  <u>Twombly</u>, 550 U.S. at 570.  Time may tell if Treadwell can substantiate her allegations with evidence at summary judgment or beyond.

Treadwell has not plausibly pled, however, that Jackson's case assignment decisions contributed to the creation of a hostile work environment.  Routine workplace decisions, such as case assignments, may be actionable under discrimination or retaliation theories but generally do

---

cannot appropriately pick a side at this stage of the case because the term surely relates to age and Treadwell has plausibly alleged that its frequent use contributed to an unwelcome hostile work environment "based on age."

not create a hostile work environment.  See Bain v. Off. of Att'y Gen., 648 F. Supp. 3d 19, 61 (D.D.C. 2023) (finding that plaintiff's "asserts[ions] that she was repeatedly given more onerous or less desirable cases" do not provide a "basis for relief . . . under a hostile work environment theory"); Uzoukwu v. Metro. Wash. COG, 130 F. Supp. 3d 403, 415 (D.D.C. 2015) ("The ordinary work-related activities of a supervisor, such as denying an employee work opportunities or issuing a negative performance evaluation, are not sufficiently severe or abusive to constitute objective harassment."); see also Wade v. District of Columbia, 780 F. Supp. 2d 1, 19 (D.D.C. 2011).  The Court finds no reason to depart from this general rule as Jackson's purported assignment decisions were not "severe or offensive."  Swann v. Off. of Architect of Capitol, 73 F. Supp. 3d 20, 32 (D.D.C. 2014).

Likewise with the non-promotions.  They, too, involve ordinary job decisions that generally are not actionable under a hostile work environment theory.  See Laughlin v. Holder, 923 F. Supp. 2d 204, 221 (D.D.C. 2013) ("[T]he Court simply does not find that the non-promotions and other performance-based actions alleged rise to the level of an actionable hostile work environment."); see also Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing hostile work environment claim that alleged, in part, that "management opposed [plaintiff's] career advancement").  They were not pervasive in any case.  Two instances of non-promotion, two years apart, constitute "isolated incidents" rather than "pervasive conduct."  Ross v. Georgetown Univ., No. 18-cv-0671 (ABJ), 2019 WL 2452326, at *9 (D.D.C. June 12, 2019) (two suspensions and a demotion spread out over two and a half years are "more correctly described as isolated incidents than as pervasive conduct that might plausibly have created a hostile condition"); see also Jimenez v. McAleenan, 395 F. Supp. 3d 22, 37 (D.D.C. 2019)

(seven mostly minor incidents over two and a half years were "temporarily diffuse" and suggested "lack of pervasiveness" (cleaned up)).

In sum, Treadwell has plausibly pled a hostile work environment claim, but only with respect to the effect of the alleged offensive comments.

### IV.   Conclusion

For these reasons, it is hereby

**ORDERED** that [ECF No. 9] Defendant's Partial Motion to Dismiss is DENIED. Defendant shall file an answer to the amended complaint by January 18, 2024.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>December 19, 2023</u>